## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VENABLE, LLP.*,*<br>575 7th Street, N.W.<br>Washington, DC 20004,<br><br>       Plaintiff-Counterclaim-Defendant<br><br>       and<br><br>PAUL A. DEBOLT<br>575 7th Street, N.W.<br>Washington, DC 20004,<br>       Counterclaim-Defendant,<br><br>       v.<br><br>OVERSEAS LEASE GROUP, INC.,<br>1719 State Route 10<br>Suite 235<br>Parsippany, NJ 07054,<br><br>       and<br><br>ERNEST GEORGE BADCOCK III<br>18 Mark Twain Drive<br>Morristown, NJ 07960<br><br>       Defendants. | Case No. 14-cv-02010 (RJL) |

## FIRST AMENDED ANSWER, AFFIRMATIVE DEFENSES AND COUNTERCLAIMS

Overseas Lease Group, Inc., by its undersigned counsel, for its First Amended Answer, Affirmative Defenses and Counterclaims[1] against plaintiff-counterclaim-defendant Venable LLP and counterclaim-defendant Paul A. Debolt alleges as follows:

---

[1] Only the Counterclaims and facts in support of them have been amended.

## Answer to the Complaint

1.      Deny each and every allegation of ¶ 1 of the Complaint dated November 26, 2014 ("Complaint").

2.      Deny each and every allegation of ¶ 2 of the Complaint.

3.      Deny each and every allegation of ¶ 3 of the Complaint and state that, to the best of their knowledge, neither defendant Overseas Lease Group, Inc. ("OLG") nor its President and Chief Executive Officer, E. George Badcock III, was sued by any "predecessor counsel," as asserted in ¶ 3 of the Complaint.

4.      Admit the allegations of ¶ 4 of the Complaint.

5.      Admit the allegations of ¶ 5 of the Complaint.

6.      Admit the allegations of ¶ 6 of the Complaint.

7.      Admit the allegations of ¶ 7 of the Complaint, except deny that Mr. Badcock is a "domiciliary" of New Jersey and that he "resid[es]" in New Jersey.

8.      Admit the allegations of ¶ 8 of the Complaint.

9.      Admit the allegations of ¶ 9 of the Complaint, except deny the allegations to the extent ¶ 9 purports to assert that OLG and Mr. Badcock engaged in "tortious interference," as alleged in ¶ 9.

10.      Admit the allegations of ¶ 10 of the Complaint, except deny the allegations of the last two sentences of ¶ 10.

11.      Admit the allegations of ¶ 11 of the Complaint.

12.      Admit the allegations of ¶ 12 of the Complaint to the extent the allegations relate to the litigation entitled *Overseas Lease Group, Inc.* v. *United States*, No. 11-123 C (Ct. Fed. Cl) (the "COFC Matter") and deny the allegations of ¶ 12 of the Complaint to the extent they refer to "unrelated export-control advice as well."

13.     Admit the allegations of ¶ 13 of the Complaint.

14.     Admit the allegations of ¶ 14 of the Complaint.

15.     Deny each and every allegation of ¶ 15 of the Complaint.

16.     Deny each and every allegation of ¶ 16 of the Complaint, except admit that, to the best of OLG's and Mr. Badcock's knowledge, information and belief, a meeting among Mr. Badcock, Donna Zerbo of OLG, and counterclaim-defendant Paul A. Debolt ("Debolt"), a partner of plaintiff-counterclaim-defendant Venable LLP ("Venable"), took place in or about September 2012.

17.     Deny each and every allegation of ¶ 17 of the Complaint.

18.     Deny each and every allegation of ¶ 18 of the Complaint.

19.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 19 of the Complaint and state that any dispute between OLG and Wiley Rein LLP ("Wiley Rein") was resolved.

20.     Admit the allegations of ¶ 20 of the Complaint to the extent they assert that Venable prepared with respect to OLG an "engagement letter" and a so-called "Statement of Billing and Engagement Policies" and respectfully refer the Court to those documents for their contents.

21.     Admit the allegations of ¶ 21 of the Complaint, except state that, as asserted in the Counterclaims, *infra*, OLG never agreed to pay for unnecessary legal services, unreasonable amounts of fees or expenses, wasteful activities, double-billing, duplicative time, or unreasonable, wasteful and deceptive fees and expenses.

22.     Deny each and every allegation of ¶ 22 of the Complaint and respectfully refer the Court to OLG's Counterclaims, *infra*.

23.     Deny each and every allegation of ¶ 23 of the Complaint and respectfully refer the Court to OLG's Counterclaims, *infra*.

24.     Deny each and every allegation of ¶ 24 of the Complaint and respectfully refer the

Court to OLG's Counterclaims, *infra.*

25.     Admit that the Government issued a "debt determination" but state that the so-called "determination" was incorrect and that the Government was not entitled to reimbursement of approximately $1.3 million.

26.     Deny knowledge or information sufficient to form a belief as to the truth of the allegations of ¶ 26 of the Complaint but state that the so-called "determination" was incorrect and that the Government was not entitled to reimbursement of approximately $1.3 million.

27.     Deny each and every allegation of ¶ 27 of the Complaint, except admit that at the relevant time OLG was in talks with the United States Army Corps of Engineers to settle a matter not related to the COFC Matter.

28.     Deny each and every allegation of ¶ 28 of the Complaint, except admit the allegations of the second sentence of ¶ 28.

29.     Deny each and every allegation of ¶ 29 of the Complaint.

30.     Deny each and every allegation of ¶ 30 of the Complaint except admit that OLG requested that "Venable seek Rule 11 sanctions against the DOJ's attorneys for filing the fraud counterclaims . . ." and that Venable and Debolt unreasonably refused to do so.

31.     Admit the allegations of ¶ 31 of the Complaint.

32.     Deny each and every allegation of ¶ 32 of the Complaint, except admit that the Alternate Dispute Resolution ("AOR") process with the U.S. Department of Justice ("DOJ") was an option.

33.     Deny each and every allegation of ¶ 33 of the Complaint, except state that OLG paid Venable $392,433.39 in legal fees – a grossly inflated amount to which Venable seeks to add $303,000 through this lawsuit – and respectfully refer the Court to OLG's Counterclaims, *infra.*

34.     Admit that the ADR process took place, a process for which Venable, Debolt, and

4

others at Venable were unprepared and ineffective, as alleged in OLG's Counterclaims, *infra*.

35.  Deny the allegations of the first sentence of ¶ 35 of the Complaint and respectfully refer the Court to OLG's Counterclaims, *infra*.

36.  Admit the allegations of ¶ 36 of this Complaint, except state that the termination was for cause and respectfully refer the Court to OLG's Counterclaims, *infra*.

37.  Admit the allegations of ¶ 37 of the Complaint.

38.  Deny each and every allegation of ¶ 38 of the Complaint, except admit that OLG on or about August 7, 2014, filed a lawsuit against Venable and Debolt in the Supreme Court of the State of New York, County of New York, and respectfully refer the Court to the complaint in that action for its contents and OLG's Counterclaims, *infra*.

39.  Admit with respect to ¶ 39 to the Complaint that Venable sent a letter dated on or about August 20, 2014 but state that the assertions made by Venable in the letter were false.

40.  Admit with respect to ¶ 40 of the Complaint that a letter was sent to Venable on or about August 20, 2014 and respectfully refer the Court to the letter itself for its contents and to OLG's Counterclaims, *infra*.

41.  Deny each and every allegation of ¶ 41 of the Complaint.

42.  Deny each and every allegation of ¶ 42 of the Complaint.

43.  Admit the allegations of ¶ 43 of the Complaint, except deny that Justice Shirley Werner Kornreich found that OLG was engaged in a "forum-shopping" exercise, as alleged in ¶ 43 of the Complaint.

44.  Deny each and every allegation of ¶ 44 of the Complaint and respectfully refer the Court to OLG's Counterclaims, *infra*.

45.  Deny each and every allegation of ¶ 45 of the Complaint.

46.  Deny each and every allegation of ¶ 46 of the Complaint.

47.     Deny each and every allegation of ¶ 47 of the Complaint.

48.     State that ¶ 48 of the Complaint requires no response.

49.     Deny each and every allegation of ¶ 49 of the Complaint.

50.     Deny each and every allegation of ¶ 50 of the Complaint.

51.     Deny each and every allegation of ¶ 51 of the Complaint.

52.     State that ¶52 of the Complaint requires no response.

53.     Deny each and every allegation of ¶ 53 of the Complaint.

54.     Deny each and every allegation of ¶ 54 of the Complaint.

55.     Deny each and every allegation of ¶ 55 of the Complaint.

56.     Deny each and every allegation of ¶ 56 of the Complaint.

57.     Deny each and every allegation of ¶ 57 of the Complaint.

58.     State that ¶ 58 of the Complaint requires no response.

59.     Deny each and every allegation of ¶ 59 of the Complaint, except admit that representatives of OLG met with Debolt in September 2012.

60.     State that the allegations of ¶ 60 of the Complaint are misleading and deceptive and refer the Court to OLG's Counterclaims, *infra*.

61.     State that the allegations of ¶ 61 of the Complaint are false and misleading and refer the Court to OLG's Counterclaims, *infra*.

62.     Deny each and every allegation of ¶62 of the Complaint.

63.     Deny each and every allegation of ¶63 of the Complaint.

64.     Deny each and every allegation of ¶64 of the Complaint.

65.     Deny each and every allegation of ¶65 of the Complaint.

66.     Deny each and every allegation of ¶66 of the Complaint.

67.     Deny each and every allegation of ¶67 of the Complaint.

68.     Deny each and every allegation of ¶68 of the Complaint.

## Affirmative Defenses

### First Affirmative Defense

69.     The Complaint fails to state claims on which relief can be granted.

### Second Affirmative Defense

70.     To the extent the Complaint contains allegations of fraud, it does not satisfy the requirements of Fed. R. Civ. P. 9(b).

### Third Affirmative Defense

71.     Mr. Badcock was not a party to any contract or agreement between Venable and OLG and, as a result, has no contractual or other obligation to Venable.

## COUNTERCLAIMS

### Summary and Introduction to Counterclaims

72.     These Counterclaims arise from gross misconduct, including extraordinarily excessive overbilling, by Venable, a self-described national law firm, imposed on OLG, a comparatively small defense contractor which provided essential armored vehicles to the United States Department of Defense during the war in Afghanistan.

73.     As described more fully in the balance of these Counterclaims, Venable, although it appeared at a late stage in an action against the United States in which plaintiff had already achieved substantial success, grossly overbilled OLG for services that, as an independent analysis has revealed, were unnecessary, duplicative and wasteful.

74.     Moreover, defendant Venable, having billed and collected more than $390,000 over approximately a one-year period, refused to participate in crucial settlement negotiations held under the auspices of a skilled judge of the United States Court of Claims who had been appointed by the presiding judge to attempt to resolve an action between plaintiff and the United States. At that critical

juncture Venable refused to participate unless it received an extortionate fee of $40,000.

75.    As events developed, Venable, despite its demands for payment of the extortionate fee, failed to prepare for or effectively participate in the negotiations.

## Parties to the Counterclaims

76.    Plaintiff (Counterclaimant) OLG is a corporation organized under the laws of the State of Florida with offices in Fort Lauderdale, Florida.

77.    Defendant Venable LLP ("Venable") is a law firm with offices in New York City and elsewhere. Venable describes itself on its website as a firm with "more than 600 attorneys in nine offices across the country . . . strategically positioned to advance our clients' business objectives in the U.S. and abroad. Our clients rely on Venable's proven capabilities in all areas of corporate and business law, complex litigation . . . and regulatory and government affairs."

78.    Defendant Paul A. Debolt ("Debolt") describes himself on Venable's website as "assist[ing] companies and individuals on issues that arise from conducting business with the federal government" and as possessing experience to "resolv[e] disputes and claims . . . as a result of contract termination. . . ." His self-described attributes include utilizing "a team approach that ensures clients receive the benefit of firm-wide strength . . . ." Debolt is a partner of defendant Venable.

## Statement of Facts
## Common to All Counterclaims

### A.    The Business of Plaintiff OLG

79.    OLG is in the business of leasing vehicles to governmental and non-governmental organizations around the world. It is also in the business of providing lease consulting and leasing solutions services.

80.    In 2006, OLG was awarded an exclusive contract by the United States Department of Defense (the "DOD") to provide armor-plated vehicles, such as Land Rovers, SUVs and a variety of other vehicles, in connection with the American military operations in Afghanistan. OLG fully and

effectively performed all of its duties and obligations under the contract with the DOD (the "DOD Contract").

81.     In 2008, the DOD reneged on its contractual commitments to OLG. As a result of the DOD's failure to perform, the United States became contractually indebted to OLG for non-payment of approximately $10 million in services and vehicles already provided by OLG to the Government.

**B.      The Court of Claims Action**

82.     In or about 2010, OLG filed a litigation against the United States in the United States Court of Claims for the District of Columbia (the "Action").

83.     In 2012, through Wiley Rein LLP ("Wiley Rein"), a law firm which preceded defendant Venable, OLG obtained summary judgment determining the liability of the United States on most of the important claims asserted by OLG. The August 2012 summary judgment decision did not determine the amount of the damages for the liability the United States had inflicted on OLG.

84.     After obtaining its significant summary judgment in the Action, OLG entered into discussions with defendant Venable to substitute as its counsel for Wiley Rein. At issue for OLG at that stage, which was made known to Venable, was the need to keep to an essential minimum the expense of recovering the damages for which the summary judgment decision had already found the United States liable.

85.     In about September 2012, OLG's President, Ernest George Badcock III, and its General Counsel, Donna Zerbo, selected three DC Law firms to contact as potential legal counsel to replace Wiley Rein and they set meetings for the purpose of interviewing replacement representation in the Action. Mr. Badcock and Ms. Zerbo met with the three firms OLG was considering on September 10 and 11, 2012.

86.     After the initial meeting with each firm, OLG (acting through Mr. Badcock and Ms.

Zerbo) elected to re-interview Venable and its partner handling USG contract disputes, Debolt.

87.     During the second meeting with Venable held on September 11, 2012, Mr. Badcock and Ms. Zerbo renewed OLG's concern to obtain the most cost efficient, and timely method to establish the amounts due and owing under the three (3) summary judgments OLG had been awarded related to the Action.

88.     OLG explained to was prepared to present all the relevant supporting documents, which included turn-in sign-off forms, pictures, estimates, invoices and USG approval forms for each vehicle covered under Count I and II of the Action. OLG explained at that time that it was prepared to settle amounts due under Count II of the action, using face to face negotiations or arbitration.

89.     Debolt, acting at all times on behalf of Venable, assured Mr. Badcock and Ms. Zerbo at the first meeting, as well as at the second meeting, that achieving OLG's goal of a speedy and efficient method to collect the monies due was his and Venable's specialty. Debolt said he personally had achieved this type of goal for other clients. Debolt was emphatic that he could control the actions of the DOJ attorney involved in the case, which he agreed had likely contributed to delay in getting paid as well as undue OLG expenses, and keep the case focused on proving, and collecting payment for service rendered.

90.     At no time during either of the meeting did the issues of Wiley Rein's legal fee billing come up. During the meetings with Debolt, however, we stressed that Wiley Rein's representation was terminated because it had communicated settlement offers with the DOJ attorney without OLG's input or permission. After OLG retained Venable, Venable contacted Wiley Rein, which provided the entire case file without hesitation via messenger.

91.     Acting primarily through Debolt, Venable misrepresented to OLG that Venable's legal fees and expenses would be kept to a minimum in order to bring to a prompt resolution the Action in which OLG had already accomplished significant success.

92.     Debolt, on behalf of Venable, misrepresented his relationship as highly favorable with federal government officials in order to impress OLG that Venable would achieve a prompt payment of approximately $10 million for OLG.

C.      **The Deficiencies of Venable's and Debolt's Performance**

(i)     **Failure to Perform Mediation Functions**

93.     During the course of the process of resolving the Action, Venable and Debolt performed virtually no work to prepare for the sessions arranged by the Court of Claims Judge appointed to attempt to reach a settlement. The work of assembling historical and financial data was performed, with no assistance by Venable, by staff members of OLG.

94.     Moreover, during the several settlement conferences conducted in Washington, D.C., Debolt and several other lawyers from Venable who were in attendance made virtually no contributions to the negotiations. Stated differently, they were "potted plants" whose presence was dictated solely for the purpose of accumulating and escalating Venable's fees.

95.     As a direct result of defendants' failure to prepare for and effectively participate in the settlement discussions, OLG accepted a settlement of approximately $4 million rather than the approximately $10 million to which it was entitled. Indeed, Venable's performance with respect to the action as a whole was so profoundly and negligently deficient that, although the settlement was reached in principle months earlier, Venable did nothing in the four and one half months between the time the parties came to an agreement to expedite the Government's execution of the Settlement Agreement in order to collect the $4 million settlement amount. OLG was not paid one cent of the funds to which it was entitled while it was represented by Venable and Debolt before Venable and Debolt were discharged for cause in July 2014.

(ii)    **Gross Overbilling and Defective, Duplicative Services**

96.     Defendants' failure adequately to prepare for, participate in and finalize the settlement

11

was preceded by gross overbilling, defective and duplicative work and other deficiencies from the outset of its representation of OLG in 2012. Among other things, Venable participated in constant planning with Government attorneys to arrange for and participate in depositions, document disclosure and other types of discovery that had virtually nothing to do with the essential remaining issue in the case – the determination of the damages to which a federal judge had already determined OLG was entitled.

97.     In addition, Debolt failed adequately to assess a baseless threat by a Government lawyer to assert a $40,000 "fraud" claim – a bogus contention arising from an inadvertent miscalculation – against OLG. In particular, Debolt and Venable, without any reasonable basis for doing so, raised with OLG the specter that OLG would be completely disqualified from receiving the many millions it was owed because of a $40,000 error in billing.

98.     Venable's and Debolt's baseless concern resulted, as did many other factors, in Venable's billing for hours of legal research and expenses that were utterly unnecessary and were performed for the sole purpose of "pumping up" Venable's billings to OLG. On numerous occasions, OLG requested that Venable go back to the judge to curtail the ongoing discovery that the Government was engaging in and for which OLG knew that Venable was or would be billing OLG. Venable did not do that even though it knew that OLG was concerned about the Government's conduct of the case, conduct that was highlighted before Venable was retained, and on numerous occasions thereafter.

99.     OLG has conducted an independent analysis of all of Venable's billings, which aggregate approximately $700,000, including the more than $390,000 OLG has already paid Venable. That analysis, a summary of which is attached hereto as **Exhibit 1** and incorporated by reference, has revealed, *inter alia*:

- Venable billed an "exorbitant amount of time" for matters that were

"secretarial in nature," such as the "calendaring of events;"

- Venable's billings for essentially clerical work were calculated on the same basis as billings for lawyers' time;

- Venable routinely duplicated tasks by Debolt and James Y. Boland ("Boland"), the two lead attorneys;

- The duplication of both Debolt and Boland of research, work and effort related to work already performed by associates and other subordinates;

- The repeated excessive billing of time resulted in the charging of routine tasks that should have required only five to ten minutes, such as 1.6 hours allocated to the preparation of a straightforward document known as "Substitution of Counsel;"

- The incessant billing of time for "group meetings" with respect to simple issues that required no "group meetings;"

- The excessive billing of time was attributable to unspecified legal research;

- The excessive billing of time to legal research routinely related to issues of obvious simplicity;

- The gross overuse of, and billing for, emails among members of the so-called "Venable team" was a persistent pattern calculated to "pump up" legal fees;

- Incessant billings related solely to the leaving of voice-mail messages among Venable partners, associates and others;

- The use of multiple lawyers to prepare routine material such as requests for production of documents under Fed. R. Civ. P. 34 resulted in the fact that

13

even the simplest, most commonplace work product was the result at all times of a "team" effort, consisting of too many "team" members;

- The expenditure of extraordinary and unjustifiable amounts of time involved review of a "privilege log" prepared by the Government;

- Grossly excessive expenditures of time were billed to prepare for the depositions of employees of OLG in circumstances where the Venable personnel at issue did not conduct the depositions;

- The billing included approximately 2 hours of time for a Venable employee to "greet" people for two depositions held at Venable;

- Substantial billing related to the "loading of documents into a database," a clerical function billed by Venable as a "legal" or "lawyer's" function;

- The expenditure of time on useless or unjustifiable activities – such as reviewing "pleadings" when there was no reason to do so or the checking of VIN numbers on vehicles when such a task was unnecessary – were routinely and unjustifiably included in Venable's billings;

- The billing included more than 25 hours attributable to an individual named Elizabeth Buehler to review documents for a deposition which she did not conduct;

- The billing of time encompassed review of "task orders" when there were no circumstances at the time that would justify such a "task order" review; and

- The billing in July 2013 included 29 hours relating to "fraud" issues by a Venable employee, followed by a billing of 17 hours by Boland relating to the same topic.

## FIRST COUNTERCLAIM
### [Breach of Contract]

100.     OLG repeats and realleges each and every allegation of ¶¶ 72-99, *supra*.

101.     The contract between OLG and Venable required Venable and Debolt to provide reasonable services rationally designed to achieve the objectives of OLG to bring the Action, which was largely completed when Venable was engaged, to a point of reasonable conclusion.

102.     The contract obligated Venable to provide efficient, cost-effective services.

103.     For the reasons identified in these Counterclaims, Venable and Debolt violated the contract and damaged plaintiff OLG in an amount to be determined at trial but believed to exceed $6 million.

## SECOND COUNTERCLAIM
### [Fraudulent Inducement]

104.     OLG repeats and realleges each and every allegation of ¶¶ 72-99, *supra*.

105.     As described more fully in ¶¶ 72-99, *supra*, Venable and Debolt misrepresented their experience, expertise and alleged influence, as well as their willingness to control costs, in order fraudulently to induce OLG to enter into an agreement to retain Venable. Defendants, in other words, lied to OLG with the intent to induce OLG to rely on its lie and thus to retain Venable as its legal counsel.

106.     In reliance on Venable's and Debolt's misrepresentations, OLG retained Venable.

107.     By reason of the foregoing, Venable and Debolt have damaged OLG in an amount to be determined at trial including overpayments believed to be in excess of $100,000, costs incurred in defending against defendants' overbilling, and damages of approximately $6 million as a result of OLG's retention of defendants to assist in completing the resolution of the Action.

## THIRD COUNTERCLAIM
### [For Negligence]

108.     OLG repeats and realleges each and every allegation of ¶¶ 72-99, *supra*.

109.     Venable and Debolt failed to prepare for or adequately participate in the settlement negotiations before the designated settlement judge.

110.     Venable's and Debolt's negligence in failing to adequately prepare for and participate in the settlement process, and their negligence in failing to do so, resulted in OLG's relinquishing a claim to at least $10 million to a settlement of $4 million.

111.     By reason of the foregoing, Venable and Debolt have damaged OLG in an amount to be determined at trial but believed to exceed $6 million.

## FOURTH COUNTERCLAIM
### [Breach of Fiduciary Duty]

112.     OLG repeats and realleges each and every allegation of ¶¶ 72-99, *supra*.

113.     Venable and Debolt as attorneys at all relevant times of OLG owed OLG fiduciary duties to OLG, including a duty to discharge their obligations to OLG in an efficient and cost-effective manner and to place OLG's interests in resolving its dispute with the government ahead of Venable's and Debolt's own interest in collecting excessive legal fees.

114.     By reason of the foregoing, Venable and Debolt have violated their fiduciary duties to OLG in an amount to be determined at trial but believed to exceed $100,000.

## FIFTH COUNTERCLAIM
### [Negligent Misrepresentation]

115.     OLG repeats and realleges each and every allegation of ¶¶ 72-99, *supra*.

116.     As described more fully in ¶¶ 72-99, *supra*, Venable and Debolt misrepresented how they would conduct and staff this case if retained by OLG knowing that OLG was highly sensitive to the costs of the litigation.

117.     OLG relied on Venable's and Debolt's false statement or omission was to how

Venable would conduct the litigation on OLG's behalf and in reliance, engaged Venable as its counsel.

118.    Venable, for the reasons described in greater detail in ¶¶ 72-99, *supra*, grossly overstaffed the case, failed to take reasonable actions to reduce legal costs, and then overbilled OLG for the services it falsely said were properly rendered.

119.    Venable has damaged OLG in an amount to be determined at trial but believed to exceed $100,000.

## GENERAL PRAYER FOR RELIEF

WHEREFORE, defendant Overseas Lease Group, Inc. requests that the Court enter a judgment in its favor (i) dismissing the Complaint and action as to it and (ii) granting on the Counterclaims an amount to be determined at trial but believed to exceed $100,000, together with punitive damages for fraud and were otherwise appropriate and an award of costs, fees and interest.

## JURY DEMAND

Defendant-Counterclaimant OLG respectfully requests trial by jury on all issues so triable.

Dated:  May 28, 2015                         Respectfully submitted,

                                             WILLIAM COWDEN LLC

                          By:    /s/ William R. Cowden
                                 DC Bar #426301
                                 William Cowden LLC
                                 1150 Connecticut Avenue, N.W., Suite 900
                                 Washington, DC 20036
                                 202) 862-4360 (T) / (888) 899-6053 (F)
                                 wcowden@cowdenllc.com
                                 *Counsel for Defendant-Counterclaimant*

                                 – and –

                                 PAUL BATISTA, P.C.
                                 26 Broadway – Suite 1900
                                 New York, New York 10004
                                 (212) 980-0070 (Tel) / (212) 344-7677 (Fax)
                                 Batista007@aol.com
                                 *– Of Counsel –*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of May 2015, a true and correct copy of the foregoing was served electronically through the Court's CM/ECF system on all counsel of record.

/s/ William R. Cowden
William Cowden LLC
1150 Connecticut Avenue, N.W., Suite 900
Washington, DC 20036
(202) 862-4360 (T) / (888) 899-6053 (F)
wcowden@cowdenllc.com
*Counsel for Defendants-Counterclaimant*