# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

VENABLE LLP,                          )
                                      )
        Plaintiff,                    )
                                      )
    v.                                )    Civil Case No. 14-02010 (RJL)
                                      )
OVERSEAS LEASE GROUP, INC., *et al.*, )
                                      )    **FILED**
        Defendants.                   )
                                           **JUL 2 8 2015**

                                           Clerk, U.S. District & Bankruptcy
                                           Courts for the District of Columbia



## MEMORANDUM OPINION
July **27**, 2015 [Dkt. # 15]

Plaintiff Venable LLP ("Venable" or "plaintiff"), a Maryland limited liability

partnership engaged in the practice of law, brought this suit against defendants Overseas

Lease Group, Inc. ("OLG" or "defendant"),[1] a corporation engaged in the business of

leasing vehicles to organizations around the world, and Ernest George Badcock III

("Badcock"), president and chief executive officer of OLG, to recover legal fees and

costs owed to Venable arising out of representation in a separate litigation. *See generally*

Complaint [Dkt. # 1] ("Complaint" or "Compl."). In OLG's answer to the complaint,

OLG asserted counterclaims,[2] including (1) breach of contract, (2) fraudulent

inducement, (3) negligence, (4) breach of fiduciary duty, and (5) negligent

---

[1] For purposes of this Opinion, which specifically addresses plaintiff's motion to dismiss the counterclaims filed by OLG, reference to "defendant" shall refer to OLG alone, unless otherwise noted.

[2] The counterclaims also named Paul A. Debolt ("Debolt"), a partner of Venable, as a defendant to the counterclaims. Unless otherwise noted in this Opinion, "plaintiff" refers solely to Venable.

misrepresentation. *See* Def. OLG's First Am. Ans., Aff. Defenses, & Counterclaims [Dkt. # 20] ("Am. Ans.").[3]  Currently before the Court is plaintiff's counter motion to dismiss OLG's counterclaims, for failure to state a claim under Federal Rules of Civil Procedure (the "Rules") 12(b)(6), 8(a), and 9(b).[4]  *See* Mot. to Dismiss Counterclaim of OLG [Dkt. # 15] ("Motion" or "Mot.").[5]  Upon due consideration of the pleadings, the relevant law, and the entire record herein, the motion is GRANTED and defendant OLG's counterclaims against plaintiff are DISMISSED.

## BACKGROUND

OLG is in the business of leasing vehicles to governmental and nongovernmental organizations around the world. Am. Ans. ¶ 79.  In 2006, OLG was awarded an exclusive contract by the United States Department of Defense (the "DOD") to provide armor-plated vehicles, such as Land Rovers, SUVs and a variety of other vehicles, in connection with the American military operations in Afghanistan. Am. Ans. ¶ 80.  In or about 2010, Wiley Rein LLP ("Wiley Rein") filed a lawsuit on behalf of OLG against the United States in the United States Court for Claims, alleging non-payment in the amount of approximately $10 million for services and vehicles OLG had already provided to

---

[3] OLG filed an earlier answer that alleged gross overbilling as a cause of action, which has since been abandoned. *See* Dkt. # 14.

[4] I denied by minute order defendant Badcock's motion to dismiss. *See* Minute Order, dated July 21, 2015; Def. E. George Badcock III's Mot. to Dismiss Count III of the Compl. [Dkt. # 11].

[5] Although OLG's amended answer was filed after plaintiff's motion to dismiss, plaintiff in its reply has requested that the motion be considered to address the amended pleading because it fails to cure the defects that prompted the motion in the first place. *See* Reply Mem. in Supp. of Mot. To Dismiss Counterclaims of OLG, at 2 [Dkt. # 22]; *see also* 6 Charles Alan Wright et al., Federal Practice and Procedure § 1476, at 638 (3d ed. 2010) (citing, e.g., *Jordan v. City of Phila.*, 66 F. Supp. 3d 638, 641 n.1 (E.D. Pa. 1999)); *see Sunset Financial Resources, Inc. v. Redevelopment Group V, LLC*, 417 F. Supp. 2d 632, 642 n.15 (D.N.J. 2006) (collecting cases).

DOD. Am. Ans. ¶¶ 81-82. In 2012, Wiley Rein helped OLG obtain summary judgment on claims asserted by OLG, but that judgment did not determine the amount of damages. Am. Ans. ¶ 83. After obtaining summary judgment, plaintiff Venable was brought in to replace Wiley Rein and to assist with recovering the damages that were determined to be owed by summary judgment in a "cost efficient" and "timely manner." Am. Ans. ¶¶ 84, 87.

OLG alleges that during the process of resolving the damages issue, Venable "performed virtually no work" and made "virtually no contributions" to the negotiations. Am. Ans. ¶¶ 93-94. OLG alleges that Venable's presence at the negotiations was "solely for the purpose of accumulating and escalating fees" and that as a result of Venable's failure to prepare for and effectively participate in settlement discussions, OLG accepted a settlement of approximately $4 million instead of the approximately $10 million to which OLG believes it is entitled. Am. Ans. ¶¶ 94-95. OLG further alleges that Venable made misrepresentations about the legal services it would provide and spent hours of legal research that were unnecessary. Am. Ans. ¶¶ 97-99.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides that a district court shall dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Although all factual allegations in a complaint are assumed to be true when deciding a Rule 12(b)(6) motion, and all reasonable inferences are drawn in a plaintiffs favor, the Court need not accept either inferences "unsupported by the facts set out in the complaint" or "legal conclusions cast in the form of factual allegations." *Kowal v. MCI*

3

*Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiffs obligation to provide the grounds of his entitle [ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (citations and internal quotation marks omitted). To survive a motion to dismiss, a complaint must contain sufficient factual matter that, if accepted as true, "state[s] a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). This plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* In addition, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, 'this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court.'" *Twombly*, 550 U.S. at 558 (quoting 5 WRIGHT & MILLER § 1216 at 233-234) (alteration in original).

A plaintiff alleging fraud must also "state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b); *United States ex rel. Williams v. Martin–Baker Aircraft Co.*, 389 F.3d 1251, 1256 (D.C. Cir. 2004) (citing *United States ex rel. Totten v. Bombardier Corp.*, 286 F.3d 542, 551-52 (D.C. Cir. 2002)). The particularity requirement allows the defendant to "defend against the charge and not just deny that they have done anything wrong." *Williams*, 389 F.3d at 1259 (quotations omitted).

4

Accordingly, to survive a motion to dismiss, a complaint pleading fraud must "state the time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud . . . [and must] identify individuals allegedly involved in the fraud." *Id.* at 1256 (internal quotations and citations omitted).

## ANALYSIS

In order to state a claim of professional negligence under D.C. law,[6] a plaintiff must allege: (1) the attorney's employment; (2) his neglect of a reasonable duty; and (3) that such negligence resulted in and was the proximate cause of loss to the client. *Macktal v. Garde*, 111 F. Supp. 2d 18, 21 (D.D.C. 2000) (quoting *Niosi v. Aiello*, 69 A.2d 57, 60 (D.C. 1949)), *aff'd*, No. 00-7207, 2001 WL 238170 (D.C. Cir. Feb. 23, 2001). An "attorney is not liable for negligence if, notwithstanding the negligence, the client had no cause of action or meritorious defense as the case may be; or that if conduct of an attorney with respect to litigation results in no damage to his client the attorney is not liable." *Niosi*, 69 A.2d at 60. Additionally, "actual, not speculative, damage is required to succeed on a legal negligence claim." *In re Estate of Curseen*, 890 A.2d 191, 194 (D.C. 2006) *see also Poole v. Lowe*, 615 A.2d 589, 593 (D.C. 1992) ("[T]here must at least have been injury not dependent upon a contingent or uncertain event; for then the fact of damage would be speculative and a cause of action would not have accrued" (internal quotation, citation, and editing omitted)); *Knight v. Furlow*, 553 A.2d 1232, 1235 (D.C. 1989) (explaining "a claim for legal malpractice does not accrue until the plaintiff-client has sustained some injury from the malpractice" and the "mere breach of a

---

[6] The parties do not dispute that D.C. law applies to defendant's counterclaims.

professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a cause of action for negligence'") (internal quotation marks omitted).

OLG claims that as a result of Venable's negligence, OLG was forced to accept a $4 million settlement rather than the $10 million it believes it was owed. Am. Ans. ¶ 95. However, "hindsight challenges to recommended settlements as being inadequate must fail if they are based only on speculation about what alternative results could have been achieved." *Macktal*, 111 F. Supp. 2d at 22. Here, none of the alleged damages logically flow from any acts of Venable, but instead from OLG's voluntary decision to settle its claims against DOD. In fact, OLG accepted the settlement offer that it now claims was the product of inadequate representation *after* it had already fired Venable and initiated a suit in New York against Venable pressing the same claims as the counterclaims here. *Compare* Compl., *Overseas Lease Group, Inc. v. Venable LLP*, No. 157792/2014 (N.Y. Sup. Ct. filed on Aug. 7, 2014), *with* Mot., Ex. 2 (Settlement Agreement), dated Sept. 12, 2014, at p.9 [Dkt. # 15-3].[7]

---

[7] OLG specifically references the settlement agreement in its answer, and the court may take judicial notice of facts in the public record. *See* Am. Ans. ¶ 95; *Ward v. D.C. Dep't of Youth Rehab. Svcs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011)) (court may consider documents attached as exhibits or incorporated by reference in the complaint, or "'documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by [the parties]'") (citation and quotation marks omitted); *Covad Commc'ns Co. v. Bell Atl. Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) ("court may look to record of another proceeding to avoid unnecessary proceedings when an undisputed fact on the public record makes it clear that the plaintiff does not state a claim upon which relief could be granted") (citation and quotation marks omitted).

In *Vogel v. Touhey*, the Court of Special Appeals of Maryland rejected a

malpractice claim where plaintiff fired her attorney four days prior to the divorce hearing

where the terms of a settlement were finalized.  The *Vogel* court explained:

> Because the divorce trial had not yet occurred, [plaintiff] could have undertaken a
> review of Dr. Alfert's financial records and attempted to secure a more favorable
> settlement, if appropriate.  If that course of conduct had occurred, obviously there
> would have been no basis for a malpractice suit. . . . [Plaintiff's] decision to settle
> made it impossible for her to obtain the result she desired from Dr. Alfert, and it
> set up the scenario for a malpractice claim against [defendant] that might
> otherwise have been avoided.

828 A.2d 268, 290 (Md. Ct. Spec. App. 2003).[8]  Here, a corporate entity with in-house

counsel fired its attorney for purported negligence, brought suit for that negligence, and

nonetheless agreed to a settlement two months later, fully aware of its possible defects.

Just as in *Vogel*, the voluntary, non-coerced decisions of OLG are what set up the

scenario for a malpractice claim against Venable that might otherwise had been avoided.

*See Vogel*, 828 A.2d at 289 ("Under these facts, appellant's decision to settle was a

matter of her choice, not the product of duress or coercion.").  Accordingly, the motion to

dismiss the claim for negligence must be GRANTED.

Where, as here, a party has alleged a claim for legal negligence and other claims

that, "in one form or another, restate[ ] the malpractice claim in tort or contract form," the

District of Columbia Court of Appeals has held that the other claims "must generally

---

[8] I have not found, and the parties have not identified, malpractice cases under D.C. law
premised on a negligently negotiated settlement to which the client agreed.  However, when
"local law is silent the common law of Maryland is especially persuasive authority as Maryland
law is historically the source of the District's common law." *Interstate Fire & Cas. Co. v.
Washington Hosp. Ctr. Corp.*, 758 F.3d 378, 383 (D.C. Cir. 2014) (citation and quotation marks
omitted).

reach the same result as the underlying malpractice claim." *Macktal v. Garde*, 111 F. Supp. 2d 18, 22-23 (D.D.C. 2000) (discussing *O'Neil v. Bergan*, 452 A.2d 337, 342-43 (D.C. 1982), and *Asuncion v. Columbia Hosp. for Women*, 514 A.2d 1187, 1190 (D.C. 1986)). "Therefore, if plaintiff is unable to prove his professional negligence claim, contract and tort claims which are essentially restatements of the failed malpractice claim must also fail." *Macktal*, 111 F. Supp. 2d at 23. The breach of contract, fraud, negligent misrepresentation, and breach of fiduciary duty all essentially restate the legal negligence claim in different forms – all are premised on the assumption that, but for Venable's alleged negligence, OLG would have recovered the $10 million it believed it was entitled to instead of the $4 million settlement it voluntarily entered into. *See* Am. Ans. ¶¶ 100-119.

Even assuming the fraud and negligent misrepresentation claims were not restatements of the negligence claim, both are inadequately alleged. The essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation. *Lee v. Bos*, 874 F. Supp. 2d 3, 6 (D.D.C. 2012). The essential elements of negligent misrepresentation are: (1) a false statement or omission of fact which the defendant had a duty to disclose, (2) involving a material issue, (3) on which the plaintiff reasonably relied to her detriment. *Anderson v. USAA Cas. Ins. Co.*, 221 F.R.D. 250, 254 (D.D.C. 2004).

Both negligent misrepresentation and fraud require false representations and reasonable reliance. Debolt, or unnamed others acting on behalf of Venable, allegedly

made the following six misrepresentations, either fraudulently or negligently: "achieving OLG's goal of a speedy and efficient method to collect the monies due was his and Venable's specialty," Am. Ans. ¶ 89; "he personally had achieved this type of goal for other clients," *id.*; he had a "highly favorable [relationship] with federal government officials in order to impress OLG that Venable would achieve a prompt payment of approximately $10 million for OLG," *id.* at ¶ 92; "he could control the actions of the DOJ attorney involved in the case," *id.* at ¶ 89; "he could "keep the case focused on proving, and collecting payment...," *id.*; and "Venable's legal fees and expenses would be kept to a minimum," *id.* at ¶ 91.[9]

However, under D.C. law, "generalized statements of optimism that are not capable of objective verification" are puffery, not actionable misrepresentations. *S.E.C. v. E-Smart Technologies, Inc.*, 2014 WL 6612422, *12 (D.D.C. 2014) (quoting *Freeland v. Iridium World Comm., Ltd.*, 545 F. Supp. 2d 59, 76 (D.D.C.2008)); *Shah v. GenVec, Inc.*, 2013 WL 5348133, *15 (D. Md. 2013) (vague and general statements of optimism are understood to be nothing more than puffery); *Whiting v. AARP*, 701 F. Supp. 2d 21,

---

[9] OLG also alleges that Venable "grossly overstaffed the case, failed to take reasonable actions to reduce legal costs, and then overbilled OLG for the services it falsely said were properly rendered." *Id.* at ¶ 118. However, these "overbilling" allegations are merely conclusory and do not point to specific facts that show how Venable actually overbilled OLG. *See Shapiro, Lifschitz & Schram, P.C. v. Hazard*, 24 F. Supp. 2d 66, 77-78 (D.D.C. 1998) (dismissing a claim asserting that law firm "charged for unnecessary services and expenditures, and charged an unreasonable and excessive number of hours for the reasonable value of the legal services received"). The only specific example—an allegation that Venable billed 2 hours of paralegal time for "greeting" people at depositions held at Venable—is demonstrably false and based on a mere typographical error in the billing record that OLG necessarily relies upon. *See* Gendron Declaration at Ex. 4, p.5 (Billing Invoice) [Dkt. # 15-6] (showing that although greeting time was billed in the narrative as "2," the total time for the line entry was "5.2," and five hours of other time was accounted for in the narrative description).

30 n.7 (D.D.C. 2010) ("the exaggerations reasonably to be expected of a seller as to the degree of quality of his product, the truth or falsity of which cannot be precisely determined.") (citation and quotation marks omitted). Furthermore, the fact that statements about future events are not ultimately borne out "does not in and of itself support an inference that [the speaker] was being untruthful." *In re XM Satellite Radio Holdings Securities Litig.*, 479 F. Supp. 2d 165, 179 (D.D.C. 2007). To be actionable, a statement as to future events must be made without the intention to perform or with knowledge that the events will not occur. *Va. Acad. of Clinical Psychologists v. Group Hospitalization and Med. Svcs., Inc.*, 878 A.2d 1226, 1234-35 (D.C. 2005). Neither is alleged here!

Under these circumstances, none of the alleged statements made by Debolt, or others, on behalf of Venable are actionable misrepresentations. All of the statements at issue are, at least, puffery, *i.e.*, general, optimistic statements incapable of objective verification. Similarly, they pertain to future events and OLG has pointed to no facts in its counterclaims that would lead to any inference, plausible or otherwise, that those statements were false when made. Indeed, with respect to the extraordinary claim allegedly made by Debolt that he could "control the actions of the DOJ attorney involved in the case," there cannot have possibly been reasonable reliance by defendant or its in-house counsel that an attorney can actually "control" an adversary, let alone counsel for the Department of Justice representing a cabinet department. *See Whiting*, 701 F. Supp. 2d at 30 n.7 (defining puffery as "outrageous generalized statement that is so exaggerated as to preclude reliance by consumers" (citations, quotations, and alterations in original

10

omitted)).  Accordingly, Venable's motion to dismiss the fraud, negligent misrepresentation, breach of contract, and breach of fiduciary duty counterclaims is GRANTED.

## CONCLUSION

Thus, for all of the foregoing reasons, plaintiff's motion to dismiss is GRANTED, and the counterclaims by OLG are DISMISSED for failure to state a claim.  A separate Order consistent with this decision accompanies this Memorandum Opinion.


_____
RICHARD J. LEON
United States District Judge